ACCEPTED
01-14-00846-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/7/2015 4:05:00 PM
CHRISTOPHER PRINE
CLERK

Cause No. 01-14-00846-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
4/7/2015 4:05:00 PM
CHRISTOPHER A. PRINE
Clerk

IN THE

# COURT OF APPEALS

### First Judicial District
### Houston, Texas

*Anna Amboree*
Appellant

*v.*

*Michelle Bonton, Ellis Bonton, Ellis Industries, Inc., The Education Valet, Inc., Sonia Jordan, Danielle Harrison and Decounder Thompson*
Appellees

Appealed from the
157th Judicial District Court
Harris County, Texas
C.A. No. 2012-23965

## APPELLANT'S REPLY BRIEF

Ellen Sprovach
ROSENBERG SPROVACH
Texas State Bar No. 24000672
3518 Travis, Suite 200
Houston, Texas 77002
(713) 960-8300 Telephone
(713) 621-6670 Facsimile

ATTORNEY FOR APPELLANT,
ANNA AMBOREE

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. 2

TABLE OF AUTHORITIES .......................................................................................... 3

III      ARGUMENT.................................................................................................... 4

A.     AMBOREE'S AMENDED CLAIMS WERE NOT CONSIDERED ..................... 4

B.     NO EVIDENCE MOTION FOR SUMMARY JUDGMENT STANDARD ......... 6

C.     PLEA TO THE JURISDICTION STANDARD.................................................. 7

D.     PRETEXTUAL FIRING AND TORTIOUS INTERFERENCE ........................... 7

E.     FRAUD AND CONSPIRACY ....................................................................... 13

F.     ALTER EGO AND SHAM TO PERPETRATE A FRAUD ............................... 13

G.     MISCELLANEOUS ..................................................................................... 16

PRAYER........................................................................................................................ 19

CERTIFICATE OF COMPLIANCE............................................................................. 20

CERTIFICATE OF SERVICE ...................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Butnaru v. Ford Motor Company,* 84 S.W. 3d 198 (Tex. 2002) .................................................. 12

*Castleberry v. Branscum,* 721 S.W.2d 270 (Tex. 1986) ............................................................ 14

*El Paso Cty. v. Ontiveros,* 36 S.W. 3d 711(Tex.App-El Paso 2001, no pet.) ............................. 17

*Juliette Fowler Homes, Inc., v. Welch Assocs.* 793 S.W. 2d 660 (Tex. 1990) ........................... 11

*King Ranch v. Chapman,* 118 S.W.3d 742(Tex. 2003) ............................................................... 6

*Schlueter v. Carey,* 112 S.W. 3d 164 (Tex.App.-Forth Worth, 2003) ...................................... 14

## RULES

TRAP 9.4(i) ................................................................................................................................. 20

TRAP 9.4(i)(1) ........................................................................................................................... 20

TRCP 166(a)(c) ..................................................................................................................... 5, 17

## STATUTES

Tex. Gov't Cod Ann. §551.001 et seq. (West 2012 & Supp. 2014) ..................... 4

## III  ARGUMENT

### A. AMBOREE'S AMENDED CLAIMS WERE NOT CONSIDERED

Appellees admit in their brief that Anna Amboree amended her petition to add a claim for a violation of the Open Meetings Act against **all** Defendants as well as one new Defendant. Appellee's Brief at 4 citing the record at CR 1:469-470.

Appellee erroneously argues that the allegation can only be made against The Rhodes School without any support or cite. However, Appellee does admit that Plaintiff addresses The Rhodes School as a defendant in that petition by stating that Amboree pled, "adds The Rhodes School as a Defendant solely to the Open Meetings violation claim and no other." Appellee's Brief at 5 citing the record at CR1:335-336. [1]

While Appellees make these erroneous arguments, Appellees wholly fail to address the Open Meeting Act violations themselves.

Appellee Bonton terminated Appellant's employment in a special meeting that was called in violation of The Open Meetings Act as well as took actions in other meetings also in violation of The Open Meetings Act. [Tab 11]. Tex. Gov't Code Ann. §551.001 et seq. (West 2012 & Supp. 2014) Appellee Bonton

---

[1] Appellees now argue that the new defendant was not in the style, however, as Appellees admit in their own brief, the new defendant was listed in section 5.5 of the amended petition, the registered agent was listed and service was requested. Appellees' Brief at 5.

4

tortiously interfered with Amboree by called a meeting in violation of the Open Meetings Act as well as the actions taken against Appellant in that illegal meeting. Appellee's subsequent actions in this meeting were void, invalid and unenforceable. Because Appellees Bonton, Jordan, Decounder and Thompson violated the Open Meetings Act they are liable in their individual capacity. It is important to remember that Attendance at an unauthorized closed meeting may carry criminal and civil penalties. Failure to certify the agenda may also carry criminal penalties, against individuals. Appellees' argument that The Rhodes Schools is the only entity for which such a cause of action can be made is erroneous.

Appellant further alleges that Appellees also failed to certify the agendas.

Because Appellee Bonton additionally violated the Open Meetings Act to further her personal interests and illegal actions she is liable in her individual capacity for the Open Meetings Act violations as well the remedies, including but not limited to back pay, actual damages and attorneys' fees.[2]

Because the trial court was required to render a summary judgment on the pleadings on file at the time of the hearing. TRCP 166(a)(c). Amboree timely filed her Fourth Amended Petition on September 8, 2014, prior to filing her response to

---

[2] In mentioned above, Appellant also added The Rhodes School as an Appellee solely to the Open Meetings Act violation claim and no other and requested service. However, the trial court issued a final judgment before service was issued, though requested.

Appellee's motion for summary judgment and plea to the jurisdiction. (CR 314). This was seven days before the submission on Appellee's motions. The Fourth Amended Petition contained new causes of action against the same Defendants, violations of the Open Meetings Act, filed within the requisite statute of limitations. (CR 314 ¶5.3-5.4). However, the trial court granted the motion for summary judgment as a final appealable order despite the fact that these claims were alive which disallowed Amboree to move forward on them. Thus, the final judgment was not final.

## B. NO EVIDENCE MOTION FOR SUMMARY JUDGMENT STANDARD

Again, in their brief as in their motion for summary judgment, Appellees simply recite the causes of action, with the only add-on in the brief is the cutting and pasting of the facts pled by Ms. Amboree. Appellees offer no facts of their own and no argument to support their argument nor do they come close to meeting their "no scintilla" burden.

In reviewing the no-evidence summary judgment motion, the court examines the record in the light most favorable to Anna Amboree and having to consider the fact that she presented more than the scintilla of evidence that is required, summary judgement was improper. *King Ranch v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003)

6

Appellees' continue their pattern of simply cutting and pasting the elements of causes of action, and stating, with no other support, that Appellant could not prove or produce competent evidence. Appellees made that same repetitive argument to each and every element of each and every claim Anna Amboree made. Appellees contend that Anna Amboree did not make a single reference to the record in her brief despite the fact that Anna Amboree's brief contained 14 plus pages with each sentence specifically citing to the record. To say Appellees' brief is as disingenuous as their motion is an understatement.

## C. PLEA TO THE JURISDICTION STANDARD

Appellees did not address the Plea to the Jurisdiction in its brief. Appellant stands by her briefing on this issue.

## D. PRETEXTUAL FIRING AND TORTIOUS INTERFERENCE

Appellees actually argued in their brief that Anna Amboree failed to supply this Court with any evidence that the Appellees tortiously interfered with her employment and that Anna Amboree failed to cite to the record. Anna Amboree set out 14 and a half pages of facts supporting that interference **with each sentence citing to the record.**

Anna Amboree provide this Court with the facts necessary to demonstrate how Appellee Michelle Bonton and her cohorts and co-Appellee's used their own personal interests not only to fund themselves and their families but to interfere

7

with Anna Amboree's ability to make a living when Anna Amboree got in the way of their schemes.

Anna Amboree provided this Court with the substantiated facts and record to show the flagrant misuse of Charter School funds, diverted to create personal companies solely for their (largely "her own profit" in the form of Michelle Bonton) own profit and Appellees' subsequent unprivileged termination of Appellant and tortious interference. This unprotected tortious interference, solely to feed their own personal interests, occurred after Appellant continued to inform Appellees that their actions were unethical, improper and illegal.

Appellant, Anna Amboree, provided this Court with the supported facts and argument that Michelle Bonton started a charter school (using government funds), to support relatives and a best friend, to pay that friend for promotion work, to pay that friend and board president back rent, to start a for profit daycare on those premises, (free from rent, having to pay for equipment and supplies), started a for profit bus company with funds from the school, started that bus company with a falsified bid and falsely represented that she had buses and drivers and then interfered with Anna Amboree's employment only after Anna Amboree continued to advise Appellee Bonton of the illegality, unethical nature and improper business decisions of her actions and refusing to participate in such illegal acts, particularly with regard to Appellee Bonton starting a company for her own financial gain to

8

perform the transportation for the Rhodes School. In other words, Appellees got Anna Amboree out of the way by tortiously interfering with her employment.

As pointed out in her brief, the seminal event that pushed Appellees over the edge to fully interfere with Amboree's employment was when Amboree told Appellee Bonton that the attendance numbers she fraudulently and illegally inflated on the enrollment for the school to get more funds for her personal company was illegal and that Amboree could not be part of it. Not ironically, Amboree had always been the individual who drafted the budget and the enrollment numbers, but because Bonton was planning on inflating those numbers to get more money, she removed Amboree from those duties. Appellee Bonton determined that Appellant was too much of an obstacle to Appellee Bonton continuing to use The Rhodes School as a conduit for her own For Profit businesses by siphoning off government funds, some from hard earned tax dollars. This was done, not in the interest of any <u>school, but personal interest and Appellees tortiously interfered with Appellant's employment and fired Anna Amboree.</u> To make it look good, Bontons' daughter and friend were fired at the same time arguing budget constraints. Yet Bonton knew she was getting a multimillion dollar grant and, <u>just as swiftly, after firing Amboree, hired her daughter and niece back.</u>

Appellant has shown this Court how Appellee Michelle Bonton (and her husband Ellis) are the alter ego of both The Crayon Club (The Education Valet, Inc.) and Ellis Industries, Inc. Michelle Bonton enjoys no privilege of immunity or protection and Anna Amboree has standing to pursue her claims against all Appellees in this case, specifically, The Education Valet, Inc., Ellis Industries, Inc., and Ellis Bonton.

Appellees Bonton have created these entities as facades for themselves as the dominant and only shareholders, they have siphoned off funds from The Rhodes School for their personal use and profit, treated the assets as their own, failed to maintain arms' length between the related entities (with each other and the school), and had no capitalization until The Rhodes School improperly and funded them based on Bonton's fraud. The entities were merely tools to make a profit from government funds.

Michelle Bonton and Ellis Bonton are not only individual Appellees in this case; Michelle and Ellis Bonton are Appellees Ellis Industries, Inc., and The Education Valet, Inc. The adverse actions, conspiracy, fraud, tortious interference and wrongful termination were committed by Michelle and Ellis Bonton whether in their individual capacities or as alter egos of Ellis Industries, Inc., and the Education Valet, Inc.

10

Appellant was terminated from her employment by Appellee Michelle Bonton, in Michelle Bonton's personal interest, the interests of her husband Ellis and their alter ego corporations (and against the interests of The Rhodes School), and has suffered damages. Appellant Anna Amboree has a personal stake in the outcome of this lawsuit and has been aggrieved and suffered damages and a real controversy exists between Amboree and all of the Appellees. Anna Amboree maintains standing against all the Appellees of this lawsuit.

Other than a blanket statement in their brief that "Amboree does not offer any evidence to establish that any of the Appellees willfully and intentionally interfered with her contract," Appellees appear unable to bring forth an argument. Surprisingly, though it has nothing to do with this case or tortious interference on a whole, Appellees continue to assert that Amboree does not challenge that her employer was The Rhodes School. Though Amboree has continued to point this out to Appellees, and contrary to Appellees' contention, a terminable at will contract may support a claim for tortious interference. *Juliette Fowler Homes, Inc., v. Welch Assocs.* 793 S.W. 2d 660, 664 (Tex. 1990). [Tab 10]. Despite sharing this information with Appellee's, in their brief they continue to argue not only that, but that, Appellee does not seem to understand that *any* individual, not just the employer, can tortiously interfere with your employment.

11

Parties agree that Appellant was a terminable at will employee. Appellant has offered substantial evidence that Appellees 1) willfully and intentionally interfered with her employment at the Rhodes School, firing her without legitimate reason and for the personal and financial interests of the individuals and not the school itself, that that interference, the termination, 2) caused Appellant's injuries and that 3) Amboree incurred actual damage, including but not limited to compensation. *Butnaru v. Ford Motor Company,* 84 S.W. 3d 198, 207 (Tex. 2002).

It was Michelle and Ellis Bonton, as themselves, and the alter egos of The Education Valet, Inc. and Ellis Industries, Inc., that willfully and intentionally interfered with Appellant Anna Amboree's employment at The Rhodes School to further their own interests and get Amboree out of the way. Mrs. Bonton went so far as to create yet another lie as to why she fired Appellant, that is, that funds would not support her job. This was not true. Appellee Bonton wanted to fire Appellant prior to October 1, 2010 because The Rhodes School was receiving a $1.3 million Fine Arts Magnet Grant. The members of the board conspired with Appellee Bonton. In order to try and make Appellant's, and one other's, termination look legitimate, Appellee Bonton and the board also furloughed Appellee Bonton's daughter and Bonton's friend Mignonne Anderson who were recently hired in July 2010. However, after furloughing her daughter Ashley Bonton and friend Mignonne Anderson, Appellee Bonton quickly rehired them

12

back. Appellee Bonton admits to rehiring her relatives. Appellee makes much ado in their motion that Texas is an employment at will state.

Appellees again try to bait the red herring to no avail as an at will contract supports a tortious interference case and someone other than the employer can do the interfering. [3]

## E. FRAUD AND CONSPIRACY

Amboree clearly identified the underlying fraud of the civil conspiracy caused her damages, i.e., her termination. Amboree not only relied upon that representation, but after firing Amboree for the alleged lost grant, Appellees hired back Appellee's Bonton's relatives almost immediately.

Though in their brief, Appellees argue again that "Amboree wholly failed to proffer any evidence to substantiate that she suffered any injury" Amboree clearly, in detail, and with support set forth the facts and the injury, particularly **in that she was fired.** [emphasis ours].

## F. ALTER EGO AND SHAM TO PERPETRATE A FRAUD

Appellees wholly failed to address these issues in their brief.

Appellees Michelle Bonton and Ellis Bonton have created two corporations, The Education Valet, Inc., and Ellis Industries, Inc., that are shams to perpetuate a fraud, soley organized and operated as a mere tool or business conduit for the

---

[3] Appellee is at a loss as to the inclusion of the Restatement of Torts in the brief.

largely government funds of The Rhodes School to get into the hands of Michelle and Ellis Bonton. *Schlueter v. Carey,* 112 S.W. 3d 164 (Tex.App.-Forth Worth, 2003).

Because the Bontons totally disregarded the separation of the corporate enterprise, the law disregards it as well, so far as necessary to protect individuals and corporations. *Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex. 1986). The Bontons enjoy no corporate privilege with regard to The Education Valet, Inc., and Ellis Industries, Inc., and any corporate veil is pierced, because the Bontons, the ones in control, created and used the corporate assets of the charter school to further their own personal financial interests. The corporations were merely facades and tools for the dominant and only shareholders, Michelle and Ellis Bonton, to make money for their personal dealings.

Perhaps the most important fact on this issue is that neither The Education Valet Inc. nor Ellis Industries, Inc., had any funding or capitalization until Michelle Bonton fraudulently received funds for them via The Rhodes School.

Appellees Bonton ran The Rhodes School, Ellis Industries, Inc. and The Education Valet, Inc. as if they were their own personal "mom and pop" stores and gravy train to divert funds not only directly to Michelle Bonton but also to Mr. Bonton by directing these funds to the two companies that cannot and do not exist without The Rhodes School and of which they are the only shareholders.

Ms. Bonton had prepared minutes of a board meeting dated October 21, 2007, where she, her very good personal friend Sonia Jordan, and her mother in law, Irene Price Bonton (only listed as Irene Price, omitting the Bonton) voted to pay Michelle Bonton $89,700 per year and to allow Bonton to be compensated for funds raised on behalf of the school through grant writing efforts. On her sworn application for the charter to the state, Bonton swore that relatives would not be members of the governing board and that relatives would not be employed or receive any compensation form the sponsoring entity or the charter school. Bonton also swore under penalty of perjury that she would not be employed. Bonton asked for 10% fee on grants and ask that it be made retroactive. The request was approved. Appellee Bonton did not have a contract at the inception of the school, however, backdated contracts to support illegal commissions that she was receiving from grants.

Appellee Michelle Bonton swore under oath that she would not receive compensation from the Rhodes School in her application for charter.

Appellee Bonton put her very good personal friend, Sonia Jordan, on the board of directors of The Rhodes School. Ms. Jordan was in need of money so Appellee Bonton offered to pay Appellee Jordan for the board meetings (past and present) that were being held at her house (although The Rhodes School was closer and free.) Appellee Bonton ordered Appellant, a licensed real estate broker, to

15

complete and back validate a Texas Real Estate Commercial Lease Agreement between Sonia Jordan's husband, Marcellus Jordan and The Rhodes School. Appellant refused, telling Appellee Bonton it was illegal. Against the better interest of the school, and in the interest of herself and her friend, Appellee Bonton obtained a Texas Commercial Lease Agreement from the internet and executed it and illegally backdated the contracts between The Rhodes School and Marcellus Jordan. Appellee Jordan fraudulently signed her husband's name on the lease. Appellee Bonton ordered Appellant to write a check to pay Marcellus Jordan for the lease. Appellee Bonton paid at least $2,000.00 for two years (the past year and the following year), at the same time, for using the Jordan's house for board meetings. Appellee Jordan has admitted to signing her husband's name to the lease between Marcellus Jordan and the Rhodes School. The invoices from Marcellus Jordan are dated December 31, 2009 and December 31, 2010 though they were both provided on December 31, 2009 for alleged "rent" for the past year and the following year. The checks, however, reference an invoice dates of December 31, 2009 for each invoice.

## G. MISCELLANEOUS

Appellees suggest that Plaintiff's Third Amended Petition was not in the record on appeal. That makes no sense. Appellants Fourth Amended Petition was the last live Petition filed on behalf of Plaintiff. Appellees do fail to mention that

16

their bare boned Motion for No Evidence Summary Judgment sat dormant for 9 months prior to being set for submission. Appellant has provided a more than sufficient record to this Court to ensure a proper showing of reversible error. *El Paso Cty. v. Ontiveros,* 36 S.W. 3d 711, 714 (Tex.App-El Paso 2001, no pet.).

Appellees reach even further to suggest that pleadings are not evidence. Yet, the Fourth Amended Petition is important in this case to show that a live claim was not considered by the judge when issuing his erroneous final judgment. Not only was it a live claim not considered by Appellees' motion or the judge's order, but Appellees miss the boat when addressing that issue in this venue – the Open Records Act violations were not asserted against just solely The Rhodes School, but the Open Records Act violations were clearly asserted against all the individual Appellees – Bonton, Jordan, Harrison and Thompson - as set forth in the Petition.

Ms. Amboree's affidavit is detailed, concise, clear, sets out the facts of the her claims, are credible and supported by documentary evidence, are uncontroverted and meet the requirements of TRCP 166(a)(c).

For Appellees to even suggest an issue with regard to Amboree's credibility, after Amboree presented all the falsified evidence created by Appellee Bonton or Appellees whole, is laughable. Again, Appellees allege broadly that Amboree's affidavit contains factual conclusions or hearsay or subjective beliefs but fail to identify same.

17

Appellees continue to contend that Amboree presented a "dizzying array of facts." They may be dizzying to Appellees because they contain the illegal activity, the fraud, the conspiracy and the tortious interference of Appellees themselves. The facts speak for themselves. They are backed up by documents and the context and sworn testimony of Anna Amboree.

Appellant cannot understand how Appellees continue to argue that Amboree did not attach any evidence or testimony to her motion other than her Fourth Amended Petition. Quite frankly, Appellant contends Appellees' proposition is an outright lie. Appellant attached Anna Amboree's Affidavit to her Response to Summary Judgment as Exhibit B. The documents attached as Exhibits were referenced and sworn to and attached as Exhibits to that Affidavit. Those documents and that Affidavit were requested and are a part of this record.

Appellant is incorrect with regard to the additional cause of action against The Rhodes School. The Open Records Act violations were clearly made against Appellees Bonton, Thompson, Jordan and Harrison and The Rhodes School for solely that claim. Appellees' argument in that regard border on the unspeakable. As discussed above, these claims were amended seven days prior to the submission of the summary judgment; they were erroneously dismissed by the trial judge.

Finally, though Appellees spend plenty of time on the *Sabine Pilot* claim, it is important to note that Appellant did not appeal that claim or address it in her

initial Brief. Though that claim was correctly addressed *in the alternative,* Ms. Amboree stipulates that she was not moving forward against that claim in this appeal.

WHEREFORE, Appellant prays that this Court overturn the trial court's final judgment and allow this case to proceed to a jury, a requested.

**PRAYER**

This Court should reverse the trial court's decision to grant Defendant's Motion for Summary Judgment and remand for further proceedings.

Respectfully submitted,

/s/ Ellen Sprovach
Ellen Sprovach
Texas State Bar ID 24000672
ROSENBERG | SPROVACH
3518 Travis, Suite 200
Houston, Texas 77002
(713) 960-8300
(713) 621-6670 (Facsimile)
Attorney-in-Charge for Appellant

of Counsel:
Gregg M. Rosenberg
ROSENBERG | SPROVACH

ATTORNEYS FOR APPELLANT

## CERTIFICATE OF COMPLIANCE

As Required by TRAP 9.4(i), I certify that the Appellant's Brief contains 3,922 words, excluding the parts of the brief that are exempted by TRAP 9.4(i)(1).

Executed on April 7, 2015.

/s/ Ellen Sprovach
Ellen Sprovach

## CERTIFICATE OF SERVICE

I served a copy of this document on:

Mr. Armando Lopez
A. LOPEZ LAW FIRM, P.C.
8433 Katy Freeway, Suite 200
Houston, Texas 77024
713-647-8944 – Tel
713-647-8994 - Fax

by means of electronic transmission on the 7th day of April, 2015.

/s/ Ellen Sprovach
Ellen Sprovach